

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-1994

# Seman v. Coplay Cement Company

Precedential or Non-Precedential:

Docket 93-3544

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Seman v. Coplay Cement Company" (1994). *1994 Decisions.* Paper 39.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/39

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 93-3544

----------

CLARENCE C. SEMAN

v.

COPLAY CEMENT COMPANY
f/d/b/a
UNITED STATES CEMENT COMPANY

UNITED STATES CEMENT COMPANY,

<u>Appellant</u>

----------

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 90-01428)

----------

Argued Monday, May 2, 1994

BEFORE: GREENBERG, and GARTH, <u>Circuit</u> Judges
and ROBRENO, <u>District Judge</u>[0]

----------

(Opinion filed June 8, 1994)

Kathleen A. Gallagher (Argued)
PA I.D. No. 37950
Pittsburgh Food & Beverage
Company, Inc.
437 Grant Street
1200 Frick Building
Pittsburgh, Pennsylvania  15219

----

[0]Honorable Eduardo C. Robreno, United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

Attorney for Appellant

Joseph S. Hornack (Argued)
PA I.D. No. 35165
Constance G. Rankin
PA I.D. No. 65311
Healey, Davidson & Hornack
Fifth Floor
Law & Finance Building
                Pittsburgh, Pennsylvania  15219

Attorney for Appellee

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

This appeal follows final judgment in favor of the appellee, Clarence C. Seman, on his age discrimination claim against his former employer, appellant United States Cement Company ("U.S. Cement"), pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a).[0] The trial jury found that Seman's age was a determining factor in U.S. Cement's decision to terminate his employment; that Seman would have been employed by U.S. Cement's successor company had Seman's age not been a factor

---

[0] 29 U.S.C. § 623(a) in pertinent part provides:

> It shall be unlawful for an employer--
>     (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>     (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . ..

in the termination decision, and that Seman was entitled to backpay amounting to $150,000 -- $10,000 more than Seman's counsel had requested at trial.

On appeal, U.S. Cement assigns six points of error: (1) the district court erred in denying U.S. Cement's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a); (2) the district court abused its discretion in denying U.S. Cement's motion for a new trial on the ground that the jury verdict was excessive and the result of passion, prejudice or caprice; (3) the district court erred in not reducing the verdict to the $140,000 amount requested by Seman in backpay; (4) the district court erred in instructing the jury concerning the appropriate burden of proof; (5) the district court erred in instructing the jury that it could consider whether Seman's employment would have continued with U.S. Cement's successor company in calculating U.S. Cement's liability for Seman's back pay; and (6) the district court erred in refusing U.S. Cement's request for remitter of federal income taxes on Seman's backpay award.

We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the final amended order of the district court entered on September 23, 1993. We hold that the district court did not err in denying U.S. Cement's Rule 50(a) motion, and that the case was properly submitted to the jury. We also hold, however, that the district court erred in its instruction to the jury.

The need to consider the merits of U.S. Cement's remaining arguments is therefore obviated by our determination that the erroneous jury instruction requires reversal of the final amended

judgment entered by the district court on September 23, 1993 in favor of Seman and against U.S. Cement in the amount of $167,827.83, including prejudgment interest. We thus leave the remaining issues raised on this appeal by U.S. Cement for determination in the first instance by the district court on retrial. Indeed, at oral argument counsel urged that we consider issues relating to backpay only if we were not persuaded that the erroneous jury instruction required reversal.

We, therefore, will reverse the September 23, 1993 final amended judgment, and will remand for a new trial on Seman's ADEA claim against U.S. Cement.

I.

Seman was hired by SME Bessemer Cement Company in April 1983 as a cement salesman. He retained that position when SME Bessemer was purchased in April 1987 by its wholly-owned subsidiary, U.S. Cement. Between April 1983 and January 1988, Seman was assigned to handle primarily cement field sales in southwestern Pennsylvania. In January 1988, Seman was promoted to the newly-created position of assistant sales manager for U.S. Cement, and worked briefly out of an office at U.S. Cement's plant office in Lowellville, Ohio. Although U.S. Cement executives later testified that the assistant sales manager position was never intended to be a permanent position, no one apparently mentioned that fact to Seman.

Shortly after turning 65 on May 3, 1988, Seman was asked about his plans for retirement by Arthur Edwards, U.S. Cement's

vice president of sales.  Seman informed Edwards that he did not intend to retire for at least several years.  Within a month of that discussion, Seman's position as assistant sales manager was eliminated, and Seman was ordered back to the field without any change in pay or benefits.  At that time, U.S. Cement had five cement salesmen:  Seman; Robert McDonough, 54; Frank Long, 41; Lee Lydic, 33; and Kurt Rosander, 31.  At 65, Seman was by far the oldest member of the cement sales force.

In September 1988, just a few months after being sent back to the field, Seman was informed by Edwards that U.S. Cement was reducing its sales force, and that the company had decided to lay off Seman and McDonough.  Seman requested reconsideration of that decision, and suggested to Edwards that U.S. Cement's selection of its two oldest salesmen as casualties of the reduction in force decision could be viewed as age discrimination.  Seman also threatened to communicate with the Equal Employment Opportunities Commission ("EEOC") concerning the threatened layoffs. Ultimately, U.S. Cement decided to retain McDonough, and to terminate Long, 41, along with Seman.

Effective October 31, 1988, Seman and Long were laid off from their positions as field salesmen.  Long was rehired that same day by U.S. Cement and given another position at no loss of pay.  Seman, however, was never offered reemployment in any capacity by U.S. Cement.

On August 29, 1990, Seman commenced this action in the district court, alleging a violation of the ADEA.  At trial on his claim against U.S. Cement, Seman introduced evidence showing

that, after being approached about his plans for retirement, he was laid off from a job for which he was qualified while younger and less-experienced salesmen were retained by U.S. Cement to perform essentially the same duties he had performed before his employment was terminated. The evidence also showed that all of U.S. Cement's sales people -- except for Lydic, who voluntarily left to work for a competitor -- were retained after U.S. Cement was acquired by ESSROC Materials, Inc. in August 1990. For its part, U.S. Cement presented evidence to support its position that the decision to terminate Seman's employment was based solely on legitimate nondiscriminatory business reasons, and was not in any way motivated by Seman's age.

Following the introduction of all of the evidence, U.S. Cement moved for entry of judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).[0] That motion was denied by the district court judge, who then submitted the case to the jury on special interrogatories after instructing the panel on the law. The jury was asked to determine:

> (1) Do you find by a preponderance of the evidence that plaintiff's age was a determining factor in defendant's decision to terminate plaintiff's employment? [The jury answered,] Yes;

---

[0] Fed. R. Civ. P. 50(a)(1) provides:

> If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment was a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

(2)  Do you find by a preponderance of the evidence that plaintiff would have been employed by ESSROC after it acquired, on February 27, 1990, United States Cement facility at which plaintiff was formerly employed if plaintiff's age had not been a factor in defendant's decision to terminate plaintiff's employment?  [The jury answered,] Yes;

(3)  To what amount of back pay is plaintiff entitled?  [The jury answered,] $150,000.

App. 553.

A judgment in favor of Seman and against U.S. Cement was then entered in the amount of $150,000.  U.S. Cement filed this appeal after its motion for a new trial was denied and the district court entered a final order amending judgment in favor of Seman to include prejudgment interest.[0]

II.

We exercise plenary review of an order granting or denying a motion for judgment as a matter of law and apply the same standard as the district court.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).  In an ADEA disparate treatment case, our standard requires consideration of whether or not there is substantial evidence in the record to support an

---

[0]  U.S. Cement had filed an earlier notice of appeal of the district court's February 8, 1993 order denying U.S. Cement's motion for a new trial.  At that time, Seman's motion for award of prejudgment interest was still pending before the district court. This court on May 10, 1993 dismissed U.S. Cement's earlier appeal without prejudice to U.S. Cement's ability to file a new notice of appeal once the district court ruled on the prejudgment interest motion.  The district court's final order, entered on September 23, 1993, awarded Seman $17,827.08 in prejudgment interest and accordingly amended the judgment to $167,827.83 [sic]. App. 559.

employee's contention that "'but for' his age he would not have been discharged." Billet v. Cigna Corp., 940 F.2d 812, 815 (3d Cir. 1991).

The ADEA prohibits discrimination in employment against an individual over age 40 because of that individual's age. 29 U.S.C. 623(a)(1).[0] To recover in an ADEA action, a discharged employee over the age of 40 must first establish by a preponderance of the evidence a prima facie case of age discrimination. For employees such as Seman who are not replaced because their jobs are eliminated, a prima facie case of age discrimination requires only a showing that the discharged employee was at least forty years of age when his employment was terminated, and that he was laid off from a job for which he was qualified while other workers not in the protected class were retained. Billet, 940 F.2d at 816 n.3; Turner v. Schering-Plough Corp., 901 F.2d 335, 342 (3d Cir. 1990).

At trial, Seman presented a prima facie case from which an inference of age discrimination could be drawn. The uncontroverted evidence was that, shortly after turning 65 and informing the company that he had no plans to retire, Seman was laid off while younger employees were retained. The evidence also indicated that Seman was qualified for the position; that U.S. Cement abandoned its original plan to lay off its two oldest salesman (Seman, 65, and McDonough, 54) after Seman raised the specter of an age discrimination complaint; and that the company

---

[0] See supra note 1.

instead laid off Long, 41, along with Seman, on October 31, 1988.
In addition, the parties stipulated that U.S. Cement rehired Long
on October 31, 1988 for a different position at no loss of pay,
and that all of the salesmen whose positions were not eliminated
as part of the purported reduction in force decision were far
younger than Seman.  In short, only the 65-year-old Seman lost
his job.

U.S. Cement apparently does not dispute that Seman
established a prima facie case of age discrimination.  Rather,
U.S. Cement contends on appeal[0] that Seman failed to meet his
burden of proving that U.S. Cement's proffered nondiscriminatory
business explanation for Seman's termination, a reduction in
force, was a mere pretext for discrimination and not worthy of
credence, and that the district court thus erred in not granting
judgment as a matter of law.

---

[0]  The record reveals that U.S. Cement's motion for judgment
pursuant to Fed. R. Civ. P. 50(a) stated no more than the
following:

> MR. LUCIDI [Counsel for U.S. Cement]:  For the record,
> I'd like to make a motion for judgment as a matter of law
> under Rule 50 (a) on the basis that plaintiff has failed to
> meet his ultimate burden to establish that age was the
> determinative factor in the decision to terminate
> plaintiff's employment.

> THE COURT:  Well, I think that this is a jury question
> and I'm going to overrule the motion.

App. 504-05.

In a pretext case such as this one,[0] we follow the evidentiary procedure set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), subsequently refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), and recently clarified in St. Mary's Honor Center v. Hicks, ___ U.S. ____, 113 S. Ct. 2742 (1993).[0] As now explained in Hicks,[0] the McDonnell Douglas scheme provides that, once the employee establishes a prima facie case creating a presumption of unlawful discrimination, the burden of production shifts to the employer to provide a legitimate nondiscriminatory explanation for the employer's adverse employment action. If the employer meets this burden of production, then the presumption of discriminatory intent created by the employee's prima facie case is rebutted and the presumption simply "drops out of the

---

[0] In Griffiths v. CIGNA Corp., 988 F.2d 457 (3d Cir.), cert. denied, 114 S. Ct. 186 (1993), we drew a distinction between "pretext" cases (i.e., where the employee argues that the facially legitimate reason asserted by the employer for its employment decision was false) and "mixed motive" cases (i.e., where the employee does not contend that the nondiscriminatory motives articulated by the employer did not motivate the employment decision, but rather that additional, improper motives played a role in causing that decision). Id. at 468–470. Here, Seman has challenged all of the nondiscriminatory reasons articulated by U.S. Cement as pretextual, and has not presented any direct evidence that can fairly be said to prove a mixed motive case. This case therefore is properly characterized as a pretext, and not a "mixed motive," case.

[0] McDonnell Douglas and Hicks (race discrimination) and Burdine (gender discrimination) are Title VII cases. Although the ADEA was enacted by Congress as a separate statute and is not part of Title VII, we nevertheless apply the McDonnell Douglas procedural framework within the ADEA context. See, e.g., Geary v. Visitation of the Blessed Virgin Mary Parish School, 7 F.3d 324, 329 n.4 (3d Cir. 1993) (ADEA case).
[0] See discussion infra section III, B.

picture." <u>Hicks</u>, 113 S.Ct. at 2749.  The employee "at all times bears the 'ultimate burden of persuasion.'" <u>Id.</u> (citations omitted).

In the instant case, Seman established a <u>prima facie</u> case and U.S. Cement in response came forward with a nondiscriminatory business reason for the company's decision to terminate Seman's employment.  According to the testimony of U.S. Cement's chief operating officer, Michael Carlow, and its vice president of sales, Edwards, the company determined in 1988 that it was necessary to reduce the sales force because of production problems creating a shortage of cement to satisfy current contracts.  Edwards and Carlow insisted that Seman was selected for termination not because of his age, but because Seman lacked broad sales experience and the flexibility necessary to handle the type of future sales envisaged by U.S. Cement.

Having proffered a legitimate nondiscriminatory explanation for its decision, U.S. Cement satisfied its burden of production. Consequently, the <u>McDonnell Douglas</u> framework -- with its presumptions and shifting burdens -- was no longer relevant. <u>Hicks</u>, 113 S. Ct. at 2749.  <u>Hicks</u> teaches, though, that rejection of the employer's proffered nondiscriminatory reason will <u>permit</u> the trier of fact to infer the ultimate fact of intentional discrimination, so long as there is a finding of discrimination.[0]

---

[0]  Rejection of the employer's proffered reasons, without a finding of discrimination, is insufficient to warrant judgment for the employee.  The employee "<u>at all times</u> bears the 'ultimate burden of persuasion,'" and any presumption created by the employee's establishment of a <u>prima facie</u> case "does not shift the burden of proof" to the employer.  <u>Hicks</u>, 113 S.Ct. at 2749.

Id. at 2749 n.4.  In other words, "[t]he factfinder's disbelief of the reasons put forward by the [employer] . . . may, together with the elements of the [employee's] prima facie case, suffice to show intentional discrimination."  Id.

Here, Seman's proofs had cast doubt on U.S. Cement's facially legitimate explanation for its adverse employment decision.  That evidence indicated that the younger and less-experienced salesmen retained by U.S. Cement were making calls at house accounts and soliciting new business in Seman's former sales territory after Seman was let go.  That evidence could have led the jury to disbelieve the nondiscriminatory explanation offered by U.S. Cement that layoffs were necessary because the company was committed to selling what limited cement was available to house accounts handled only by Edwards and Carlow, and not by salesmen.

Seman also introduced evidence indicating that he had more experience in the cement industry than the younger salesmen retained by U.S. Cement, and was more qualified than some of the younger salesmen.  That evidence also could have been weighed by the jury in rejecting U.S. Cement's explanation that it had retained the other salesmen instead of Seman because they had superior sales skills.  So, too, could the jury have weighed in Seman's favor the testimony of Carlow and Edwards that they had never criticized Seman's job performance.

The jury could consider all of that evidence in evaluating the merit, or lack thereof, of U.S. Cement's explanations for Seman's termination.  That evidence created factual issues requiring a credibility assessment by the trier of the fact before a final determination could be made as to whether Seman had proved his claim that U.S. Cement intentionally discriminated against him on the basis of age, in violation of the ADEA. Judgment as a matter of law in favor of U.S. Cement was inappropriate because Seman had established a prima facie case of age discrimination and had presented substantial evidence creating a factual dispute concerning U.S. Cement's facially legitimate business reasons.[0]

We hold therefore that the district court did not err in denying U.S. Cement's Rule 50(a)(1) motion.  See Hicks, 113 S. Ct. at 2748.

---

[0]  Our reading of the record satisfies us that, had the teachings of St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2749 (rejection of employer's proffered reasons, without finding of discrimination, is insufficient to warrant judgment for the employee), been known to counsel and the court at the time that U.S. Cement made its Rule 50(a) motion for judgment as a matter of law, the evidence adduced at trial would have still compelled the district court to submit the case to the jury.

III.

Even though we affirm the Rule 50(a) decision of the district court, the charge then given by the district court to the jury was incorrect in that it effectively limited the jurors' finding to one aspect of the case -- Seman's _prima_ _facie_ case. In relevant part, the jury was instructed:

> Plaintiff in this case claims that defendant used age as a determining factor in making the decision to terminate his employment.
>
> When a plaintiff brings suit under the Act, the burden of proof is on the plaintiff to prove his claim against the defendant. In order to prevail on his claim, a plaintiff must prove each of the following facts by the preponderance of the evidence:
>
> First, plaintiff must prove that he was within the protected age group; that is, over the age of 40. I charge you as a matter of law that plaintiff was within the protected age group.
>
> Second, plaintiff must prove that defendant took action that adversely affected plaintiff's employment situation, specifically that he was terminated from his employment with defendant on October 30, 1988. Excuse me, October 31, 1988.
>
> It is not disputed that plaintiff's employment was terminated on October 31, 1988.
>
> Third, plaintiff must prove that he was qualified for the job from which he was terminated.
>
> Fourth, plaintiff must prove that his age was a determining factor in the actions taken by defendant.
>
> To meet his burden of proof of proving that his age was a determining factor, plaintiff must prove that he would not have been denied the employment opportunities but for his age. But for does not require that plaintiff prove that his age was the sole or exclusive factor motivating defendant, only that age made a difference in the employer's decision. He must prove that defendant would not have terminated his employment if plaintiff's age had not been taken into account in deciding this matter.

The Act requires that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected group.

You must remember that the issue you are to decide is whether age is the determining factor in the defendant's decision. The issue is not whether defendant's reasons for plaintiff's termination were based on good cause or sound management decisions. You are not to judge whether defendant's decision was right or wrong from a business standpoint. Rather, you are to decide whether age was a determining factor underlying defendant's decision. In short, you are not to decide whether you agree or disagree with defendant's actions, only whether age was a determining factor.

In summary, to prevail on a claim of violation of the Act, plaintiff has the burden of persuading you by the fair preponderance of the evidence that he was more than 40 years old, that he was qualified, and that age was a determining factor in the decision of defendant's to terminate his employment. Age is a determining factor if plaintiff would not have received the same treatment but for his age.

Concerning the claim made by plaintiff under the Act, defendant denies that age was a determining factor in its decision to terminate his employment. Defendant states that this decision was made for legitimate, nondiscriminatory business reasons unrelated to his age.

If you find defendant's decision with respect to plaintiff was made for business reasons among which age was not a determining factor, there can be no violation of the Age Discrimination in Employment Act, and you must return a verdict for the defendant. However, if you find that plaintiff's age was a determining factor in the decision to terminate plaintiff's employment, you must return a verdict for plaintiff, and you will award damages for that discrimination as I will instruct you.

In connection with plaintiff's age discrimination claim, there was testimony that plaintiff's position was eliminated for economic reasons as part of a reduction of force -- in force.

One method by which an employee in a reduction in force case can prove that age was a determining factor in his discharge is to show that younger employees were treated more favorably in the reduction in force. Such proof may

consist of evidence that younger employees were not terminated whereas the older employees were terminated, or that work, which was formerly performed by the older employees was not reassigned or delegated to younger employees who were not terminated.  In these circumstances, you may find age to have been a determining factor in the decision to terminate such an older employee.

It is not necessary that the younger employees themselves be outside the protected age class under the Act; that is, it is not necessary that the younger employees be less than 40 years old.  The law requires only that the age difference between the terminated employees and the younger employees, together with other evidence of discriminatory intent, be sufficient to prove to you, by a preponderance of the evidence, that age was a determining factor in the discharge of such an employee.

App. 534-538 (emphasis added).

U.S. Cement assigns error to the above-highlighted portion of the jury instruction.  Specifically, U.S. Cement contends that the district court's language relating to the prima facie case in a reduction in force case could have misled jurors to believe that they were required to return a verdict in favor of Seman and against U.S. Cement solely because younger employees were not terminated.

A.

Seman contended before us at oral argument that U.S. Cement, by not raising a timely objection at the trial level, had waived its right to appellate review of this issue.  Under Federal Rule of Civil Procedure 51,

No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

The question of whether U.S. Cement timely and specifically objected to the jury charge is critical to our determination of the appropriate standard of review. See United States v. Simon, 995 F.2d 1236, 1242 n. 8 (3d Cir. 1993); United States v. Gibbs, 739 F.2d 838, 849 (3d Cir. 1984) (en banc) (holding that this court will not entertain arguments on appeal based on objections not timely raised below unless they constitute plain error), cert. denied, 469 U.S. 1106 (1985). If a timely objection did preserve the issue for appeal, our standard of review on the issue of whether the jury charge as a whole stated the correct legal standard would be plenary. Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir.), cert. denied, 114 S. Ct. 186 (1993). If the issue had not been preserved through a timely objection at trial, the "plain error" standard would apply. Gibbs, 739 F.2d at 850 n.25.

We have reviewed the record and conclude that U.S. Cement timely preserved the specific issue it raises on appeal. It did so when it excepted to the instruction that the jury could find that age was a determining factor in Seman's discharge merely by finding "that younger employees were treated more favorably in the reduction in force."

At a conference in the district court judge's chambers the day before the disputed instruction was given, the parties were asked to state their exceptions to the draft jury charge. U.S. Cement at that time raised essentially the same objection that it now raises on appeal. U.S. Cement stated:

My concern is that the jury not be confused into thinking that if they find that younger employees were not terminated in the reduction of force they must find that age was a determining factor.

* * *

My main concern is you have first a discussion . . . of the prima facie case, then there is a discussion of the employer's business reasons for the decision, then there is a discussion of the reduction in force, and my concern is that the jurors are going to forget that the employer may have a reason for what it did.

App. at 478-79.

The district court decided not to modify the "reduction in force" portion of the charge to reflect the concerns expressed by U.S. Cement's counsel at the in camera conference. Seman contends that because U.S. Cement did not renew that objection after the jury was charged, it has waived the issue for appellate review. We disagree.

U.S. Cement did not have to renew its objection because the district court at the in camera charging conference explicitly advised counsel: "[A]nything that I don't take out that you want taken out, or that I don't put in that you want put in, I'll grant you an exception and you don't need to raise it again at the end of -- at the end of the charge." App. 477.

As written, Federal Rule of Civil Procedure 51 explicitly requires that any objections to the court's charge, to be preserved for appeal, must be taken at the close of the charge, "before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. The purpose of the rule is well-settled -- the trial judge is afforded an opportunity to

correct any error that may have been made in the charge before the jury begins its deliberations.  See 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure:  Civil § 2551 (1971).  There is an exception to the rule, however, where the district court judge gives explicit instructions to the parties to proceed otherwise.  As the manager of a case, the lower court is in the best position to exercise its discretion in determining the most effective and efficient way of proceeding, given the myriad number of ways of conducting a charge conference.  As we noted in United States v. Agnes, 753 F.2d 293 (3d Cir. 1985), the failure to follow rigorously the requirements of Rule 51 does not preclude appellate review when there is "express permission by the district court for counsel to incorporate by reference objections made during the charge conference."[0]  Id. at 301 n.11 (emphasis added); see also Bowley v. Stotler & Co., 751 F.2d 641, 647 (3d Cir. 1985) (finding preservation where district court granted counsel "automatic exception to every adverse ruling").  The requirement that there be an express determination by the lower court that Rule 51 will not be applied as written serves the purpose of allowing the trial judge to direct the charging process in the manner the court deems most efficient, while also creating a reviewable record for appellate purposes of the matters as to which timely objections were made.

---

[0]   Although Agnes was a criminal case, and thus interpreted Federal Rule of criminal Procedure 30, the criminal counterpart to Rule 51, the analysis under Rule 51 is identical.  See Agnes, 753 F.2d at 301 n.11 (citing Granite Music Corp. v. United Artists Corp., 532 F.2d 718, 721-22 (9th Cir. 1976)).

In the instant case, counsel for both parties were given express permission by the district court at the <u>in camera</u> charging conference to incorporate by reference objections made during that conference.  If there was any doubt about that when counsel left the <u>in camera</u> proceeding, the district court dispelled it the following day when it stated in open court that:

Again, as I said yesterday when we were discussing the charge in chambers, after the charge is finished, after I finished giving the charge, you don't need to take any exceptions to anything that you've already raised and I've ruled on.  Just anything knew [sic].

App. 505.

We are satisfied that U.S. Cement preserved for our review the issue it now presses on appeal.  That conclusion is not inconsistent with the "policy that an appellate court will not predicate error on an issue upon which the district court was not provided with an opportunity to rule."  <u>Remington Rand Corp.-Delaware v. Business Systems, Inc.</u>, 830 F.2d 1260, 1267 (3d Cir. 1987); <u>accord</u> <u>Waldorf v. Shuta</u>, 896 F.2d 723, 739 (3d Cir. 1990).  Here, the district court had the opportunity to rule twice on the precise issue raised on appeal by U.S. Cement.  As we have observed, the district court had considered and had rejected U.S. Cement's objection to the jury charge, and it also had considered and rejected that same argument when U.S. Cement raised it again in its motion for a new trial.  App. 67.

B.

Because the district court expressly preserved for appeal U.S. Cement's exception to the reduction in force instruction, we will conduct a plenary review to determine whether the charge read as a whole accurately sets forth the correct legal standard.

Griffiths, 988 F.2d at 462.  Under that standard of review, we

must agree with U.S. Cement that the jury received what was, in

effect, two instructions on Seman's prima facie case.  The jury

first was instructed that Seman had the burden of proving his

prima facie case by showing "that he was more than 40 years old,

that he was qualified, and that age was a determining factor in

the decision of defendant's to terminate his employment."[0] App.

536.  The jury also was told that there could be no violation of

the ADEA and that it would have to return a verdict for U.S.

Cement if it found U.S. Cement's decision to terminate Seman's

---

[0]   After the Seman trial had concluded, we stated in Griffiths
that a plaintiff in a pretext case must prove that age was the
determinative factor in the employer's adverse decision.  988
F.2d at 472.  Prior to Griffiths, our cases may have suggested
that the employer's discriminatory motive need not be the sole
factor causing the employment decision in a pretext case.  See,
e.g., Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991)
(using "a determinative factor" test) (emphasis added).
Presumably for this reason, U.S. Cement never objected at trial
to the instruction that the jury could find U.S. Cement liable if
Seman proved that age was only one of the reasons for his
termination or "a determining factor."
     After receiving the parties' briefs, we requested
supplemental briefing on the question of what effect, if any,
Griffiths had on the jury instruction issue raised on appeal by
U.S. Cement.  In its supplemental brief and again at oral
argument, U.S. Cement's counsel focused only on that aspect of
the Griffiths decision discussing the order and allocation of
burdens of proof.
     Counsel never raised the Griffiths issue of whether Seman had
to prove that age was "the," rather than "a," determining factor
in the termination decision.  See Griffiths, 988 F.2d at 471–72.
U.S. Cement therefore has waived the "determining factor" issue,
and we need not decide whether the district court erred in
combining a mixed motive charge (plaintiff only need show that
age was a motivating factor or one of the reasons for the
discharge) with a pretext charge (plaintiff must prove that age
was the determining factor).

employment "was made for business reasons among which age was not a determining factor."  App. 537.

The jury then was advised that Seman could "prove that age was a determining factor in his discharge [by showing] that younger employees were treated more favorably in the reduction in force."  App. 537.  That instruction incorrectly states the applicable legal standard.  A decision affecting an employee in the protected class does not become a discriminatory decision "merely because made in the context of a reorganization, or because a younger employee is benefitted by the decision."  Billet, 940 F.2d at 827.

Taken as a whole, the charge failed to convey that, once U.S. Cement put forth a legitimate business explanation, Seman had the ultimate burden of proving that U.S. Cement intentionally discriminated on the basis of age.  The jury could not, as it was instructed, find for Seman simply on the basis that younger employees were retained by U.S. Cement.  It was not enough, in other words, to find U.S. Cement liable for age discrimination under the ADEA merely on the basis of Seman's prima facie case; Seman had to prove intentional discrimination.

Even before the recently-decided case of Hicks, the Supreme Court in United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-16 (1982), explained that the rebuttable McDonnell-Burdine presumption created by the plaintiff-employee's prima facie case "drops from the case" once the employer responds by offering evidence of the reason for the plaintiff-employee's rejection, and "the factfinder must then decide whether the

rejection was discriminatory . . . . [and t]he plaintiff retains the burden of persuasion." Id. (citations and internal quotations omitted).

Accordingly, any presumption of discrimination created by Seman's prima facie case had dropped out of the picture once U.S. Cement articulated its facially valid business reasons for the adverse employment decision. By instructing the jury that "one method by which [Seman could] prove that age was a determining factor in his discharge [was] to show that younger employees . . . were not terminated whereas the older employees were terminated," the district court well may have misled the jury to believe that Seman, merely by proving his prima facie case, satisfied his burden of proof. In so doing, the district court erred.

The potential for confusion created by the district court's failure to explain Seman's burden of proof after U.S. Cement articulated a facially nondiscriminatory explanation was without question highly prejudicial to U.S. Cement. The district court incorrectly instructed the jury that merely by virtue of retaining younger employees while terminating older protected employees, the jury in effect could find for Seman. The charge given by the district court therefore lacked clarity and content regarding the requisite elements and burden of proof.

The district court so unfairly prejudiced U.S. Cement by its charge that we are satisfied that the error infected the judicial process. Having determined that the district court's charge unjustly prejudiced U.S. Cement, we can do no less than reverse

the final order of the district court entering judgment in favor of Seman and against U.S. Cement.  See Griffiths, 988 F.2d at 472 (holding that failure of district court to charge jury correctly on allocation of proof requires reversal).

C.

By reversing the district court's judgment in favor of Seman, we are obliged to remand for a new trial.  Any new trial will require new instructions concerning the elements which Seman must establish and the burden of proof which he must carry.  In conducting a new trial, we are certain that the district court will be alert to the decision of the Supreme Court in Hicks, to which we have previously referred.  Hicks, of course, was not filed until June 25, 1993, five months after the district court had charged the jury on January 28, 1993.

As Hicks makes clear, what is required to establish the McDonnell Douglas prima facie case is "infinitely less" than what is needed to prove that an employer acted with a discriminatory intent.  113 S. Ct. at 2751.  Hicks requires that once an employer has met its burden of production by coming forward with a nondiscriminatory business reason for discharging a protected employee, the plaintiff-employee must then prove that the business reason was pretextual and that he was intentionally discriminated against on the basis of his age.  Proof of one without the other will not suffice.[0]  That is so because there is

---

[0]  Mere proof of pretext, without a finding of discrimination, is not by itself sufficient to meet the employee's ultimate burden

of proof.  Hicks, 113 S. Ct. at 2749 and n.4.  In this regard, the Hicks Court explicitly rejected the view of several courts of appeal that a finding of pretext mandates a finding of illegal discrimination.  Hicks, 113 S.Ct. at 2750 (citing, e.g., Duffy v. Wheeling Pittsburgh Steel Corp., 738 F.2d 1393, 1395-1396 (3d Cir. 1984)).  On this point the Court was quite clear:

> [N]othing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable.

113 S. Ct. at 2751.

Hicks also rejects as inadvertent dictum the language in Burdine that suggested that a plaintiff could satisfy his ultimate burden of proving discrimination merely "by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256).  Many of our cases have relied on that now-repudiated dictum in Burdine to suggest that a plaintiff could prove intentional discrimination simply by disproving the employer's facially nondiscriminatory explanation.  See, e.g., Griffiths, 988 F.2d at 469; Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991); Turner v. Schering-Plough Corp., 901 F.2d 335, 342 (3d Cir. 1990); Fowle v. C & C Cola, 868 F.2d 59, 62 (3d Cir. 1989); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 898 (3d Cir.) (in banc), cert. dismissed, 483 U.S. 1052 (1987).  After Hicks, that proposition no longer correctly states the law.  As the Hicks majority explained:

> The problem is, that that dictum contradicts or renders inexplicable numerous other statements, both in Burdine itself and in our later case-law -- commencing with the very citation of authority Burdine uses to support the proposition. McDonnell Douglas does not say, at the cited pages or elsewhere, that all the plaintiff need do is disprove the employer's asserted reason.  In fact, it says just the opposite:  "[O]n retrial respondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision."  * * *  The statement in question also contradicts Burdine's repeated assurance (indeed, its holding) regarding the burden of persuasion:  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

"no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, that the employer has unlawfully discriminated."  Id.

## IV.

We, therefore, will reverse the September 23, 1993 final amended judgment entered by the district court, and remand

---

    * * *    And lastly, the statement renders inexplicable Burdine's explicit reliance, in describing the shifting burdens of McDonnell Douglas, upon authorities setting forth the classic law of presumptions * * *  In light of these inconsistencies, we think that the dictum at issue here must be regarded as an inadvertence, to the extent that it describes disproof of the defendant's reason as a totally independent, rather than an auxiliary, means of proving unlawful intent.

113 S. Ct. at 2752-53 (citations and footnote omitted).

for a new trial on Seman's ADEA claim against U.S. Cement, consistent with the foregoing opinion.